| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| MARIA SANTOS LOPEZ DOMINGUEZ, *et al.*, §§§§§ | |
| Plaintiffs, | |
| *versus* § § § | CIVIL ACTION NO. 9:08-CV-200 |
| GULF COAST MARINE & ASSOCIATES, INC., *et al.*, §§§§ | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiffs' Motion to Reinstate Case (#261), wherein Plaintiffs seek to reopen this action following a dismissal under the doctrine of forum non conveniens. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motion should be denied.

I. <u>Background</u>

This case arises from a fatal maritime accident off the coast of Mexico. On October 23, 2007, a powerful storm blew across the Bay of Campeche, where the mobile drilling rig USUMACINTA was positioned near the oil production platform KAB-101, approximately ten miles north of the Mexican coast. As a result of hurricane force winds, the USUMACINTA allided with the KAB-101, damaging the platform and causing crude oil and natural gas to leak from one of its wells. The workers onboard were forced to evacuate the platform, which subsequently exploded. Although the workers boarded two lifeboats, the boats capsized in the rough waters. Twenty-two offshore workers (including two rescuers) perished and numerous others were injured.

Plaintiffs, who are residents of Mexico, are survivors and relatives of the workers killed in the accident as well as representatives of their estates. Those injured or killed in the accident worked for Mexico's state-owned oil company Petróleos Mexicanos ("Pemex") or Perforadora Central ("Perforadora"), a Mexican company that assists Pemex in oil exploration. At the time of the incident, Pemex owned the KAB-101 platform and was leasing the USUMACINTA rig from Perforadora.

In October 2008, Plaintiffs filed seven different cases in the Eastern District of Texas, Lufkin Division, asserting negligence, gross negligence, products liability, and wrongful death claims against four American companies, Defendants Gulf Coast Marine & Associates, Inc. ("Gulf Coast"), Schlumberger Technology Corporation, Halliburton Energy Services, Inc., and Matthews-Daniel Company, and Defendant Glen Carter, allegedly an American employee of Gulf Coast (collectively, "Defendants").[1] The court consolidated the cases on September 15, 2010, for the purpose of briefing and deciding the forum non conveniens issue common to each case. *See* Docket No. 196.

Acting on a motion to dismiss filed by Defendants, former United States District Judge T. John Ward conditionally dismissed the case pursuant to the doctrine of forum non conveniens on April 20, 2011. As a condition of dismissal, the court required Defendants to tender a written statement in which they agreed to "appear and submit themselves to the jurisdiction of a Mexican federal or state court, waiving any jurisdictional defenses they might normally possess." *See* Docket No. 257 (Memorandum Opinion, Apr. 20, 2011). On April 29, 2011, Defendants filed

---

[1] Pemex and Perforadora are not defendants in this suit.

the required stipulations.[2] *See* Docket No. 258. Accordingly, on May 4, 2011, the court dismissed the case based on forum non conveniens, subject to the following return-jurisdiction clause:

> Should the courts of Mexico refuse to accept jurisdiction of this case for reasons other than Plaintiffs' refusal to pursue an action or to comply with the procedural requirements of Mexican courts, this Court may reassert jurisdiction upon timely notification of the same.

*See* Order, Docket No. 259. Plaintiffs did not appeal the May 4, 2011, order.

Pursuant to the court's order, between February and May 2013, eleven Plaintiffs filed separate lawsuits in the State of Campeche.[3] Shortly thereafter, however, the Mexican courts dismissed the cases. Each court stated that it could not assert jurisdiction over Defendants because of the "Interamerican Convention concerning the Jurisdiction on the international sphere for the extraterritorial efficacy of foreign verdicts" and "by reason that the territory concerned to which

---

[2] The court's subsequent order dismissing the case pursuant to forum non conveniens acknowledges that Defendants filed the required following stipulations:

> 1) Defendants agree to appear and submit themselves to the jurisdiction of a Mexican federal or state court, waiving any jurisdictional defenses they might normally possess.
> 2) Defendants agree to waive any statute of limitations defense that they did not possess as of the date each of the seven cases was originally filed.
> 3) Defendants agree to submit to discovery in the Mexican forum in accordance with the procedural rules of the Mexican court.
> 4) Defendants agree that they will make all relevant witnesses and documents available in Mexico to the extent consistent with Mexican law.
> 5) Defendants further agree that they will make any employee witness available for trial in Mexico to the extent consistent with Mexican law.

[3] The eleven Plaintiffs are: (1) Aldo Antonio Lopez Lorenzo; (2) Antonio Montero Hernandez; (3) Feliciana Perez Lopez de Alcudia; (4) Virginia Castellanos Casanova de Porter; (5) Maria Candelaria Dzul Xool; (6) Julissa Bovio Chagoya de Solis; (7) Maria Santos Lopez Dominguez; (8) Gabriel Gonzales Toral; (9) Juan Antonio Palafox Navarrete; (10) Oscar Romero Ortega; and (11) Fernando Augusto Cervera Ramirez.

the residence of the defendants are not found in . . . this federal entity to avail itself of the acknowledgment of the lawsuit of origin."[4]

Rather than appeal the Mexican dismissals to a higher court, on October 18, 2013, Plaintiffs filed a motion to reopen or reinstate the instant case pursuant to the return-jurisdiction clause above. Plaintiffs contend that they complied with the court's order by filing suit in the State of Campeche and complying with all of Mexico's relevant procedural rules. Plaintiffs also maintain that they pursued the Mexican cases in good faith without attempting to defeat jurisdiction in Mexico.

Defendants dispute Plaintiff assertions, arguing that: (1) Plaintiffs did not provide Defendants notice of the Mexican proceedings; (2) Plaintiffs failed to offer any argument or evidence that they informed the Mexican courts of Defendants' consent to jurisdiction in Mexico; (3) Plaintiffs did not appeal the Mexican dismissals; and (4) Plaintiffs' motion is untimely. Defendants also stress that Plaintiffs are improperly attempting to relitigate the adequacy and availability of Mexico as an alternative forum.

II. Analysis

    A. FED. R. CIV. P. 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides that a court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1)    mistake, inadvertence, surprise, or excusable neglect;

---

[4] In most of the cases, the Mexican courts dismissed the lawsuits one or two days after the cases were filed.

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

A motion brought under Rule 60(b) must be made within a "reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c). "The party seeking relief from a judgment or order bears the burden of demonstrating that the prerequisites for such relief are satisfied." *Turner v. Chase*, No. 08-3884, 2010 WL 2545277, at *2 (E.D. La. June 16, 2010) (citing *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009)); *see United States v. City of New Orleans*, 947 F. Supp. 2d 601, 615 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013). "A decision with respect to a motion to reconsider pursuant to Rule 60(b) is left to the 'sound discretion of the district court and will only be reversed if there is an abuse of that discretion.'" *Laborde v. Lunceford*, No. 6:10-CV-30, 2010 WL 3946508, at *3 (E.D. Tex. Oct. 8, 2010) (quoting *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007)); *see Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 770 (5th Cir. 1995) ("[T]o overturn the district court's denial of [a] Rule 60(b) motion, it is not enough that a grant of the motion might have been permissible

or warranted; rather, the decision to deny the motion must have been sufficiently unwarranted as to amount to an abuse of discretion.") (internal quotations omitted).

Plaintiffs filed the instant motion, asserting that "the [c]ourt may reinstate this case pursuant to FED. R. CIV. P. 60(b)(6)." Nonetheless, in their reply brief, Plaintiffs argue that Rule 60(b)(6) does not apply to cases like this one, where Plaintiffs seek reinstatement pursuant to a return-jurisdiction clause following a dismissal for forum non conveniens. Plaintiffs, however, cite no case, binding or persuasive, in which a court has expressly concluded that Rule 60(b) does *not* apply under circumstances similar to those presented here. Further, it does not appear that the United States Court of Appeals for the Fifth Circuit has spoken on the issue. In contrast, several courts have applied Rule 60(b)(6) in considering the propriety of reopening a case after a dismissal for forum non conveniens. *See Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2012 WL 5364241, at *4-5 (S.D. Fla. Oct. 30, 2012), *aff'd*, 741 F.3d 1349 (11th Cir. 2014); *see also Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013); *Mendes Junior Int'l Co. v. Banco Do Brasil S.A.*, No. 09-3478-CV, 2010 WL 3818094, at *1-2 (2d Cir. Oct. 1, 2010).

Under Rule 60(b)(6), a district court may relieve a party from an order or proceeding for any reason that justifies relief, other than those also enumerated in Rule 60(b). *See Rocha v. Thaler*, 619 F.3d 387, 399-400 (5th Cir. 2010), *cert. denied*, 132 S. Ct. 397 (2011). "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, [and] [the Fifth Circuit] [has] also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present." *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010), *cert. denied*,

6

131 S. Ct. 2292 (2011) (quoting *Batts v. Tow-Motor Forklife Co.*, 66 F.3d 743, 747 (5th Cir. 1995)); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 593 n.19 (5th Cir. 2014). "'[T]he rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of all the facts."'" *Borne v. River Parishes Hosp., L.L.C.*, No. 12-30749, 2013 WL 5977133, at *2 (5th Cir. Apr. 22, 2013) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (quoting *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927 (1970))). Rule 60(b)(6) is a "catch-all provision, meant to encompass circumstances not covered by Rule 60(b)'s other enumerated provisions." *See Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002); *accord Margoles v. Johns*, 798 F.2d 1069, 1073 n.6 (7th Cir. 1986) ("Relief under Rule 60(b)(6) is appropriate only if the grounds asserted for relief do not fit under any of the other subsections of Rule 60(b)."); *Hindi v. Toyota Motor Corp.*, No. 2:05-CV-11, 2011 WL 865488, at *4 (E.D. Tex. Mar. 10, 2011) ("Plaintiff cannot circumvent the time limitations of Rule 60(c)(1) by asserting a Rule 60(b)(6) motion with allegations that are more appropriate to support a Rule 60(b)(3) motion [which pertain to fraud, misrepresentation, or misconduct by the opposing party].").

B. Litigation in the Foreign Forum

Without regard to whether Rule 60(b)(6)'s "exceptional circumstances" standard applies here, "a plaintiff whose case is dismissed for forum non conveniens must litigate in the foreign forum in good faith." *In re Air Crash Over the Mid-Atl.*, 792 F. Supp. 2d 1090, 1095 (N.D. Cal. June 15, 2011); *see Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1031 (9th Cir. 2011) ("If the district court determines that the primary reason the Mexican courts declined to take

7

jurisdiction of Plaintiffs' case was Plaintiffs' actions or inactions in the case, it retains discretion to again order dismissal, with appropriate conditions, if any."); *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 573-74 (D.C. Cir. 2010) (holding that plaintiffs were not entitled to litigate in United States because they "consistently worked to undermine their suit in Cameroon"); *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 706-07 (7th Cir. 2005) (remanding action to district court to assess whether the plaintiffs' efforts to litigate in Mexico were taken in good faith); *Huang v. Advanced Battery Tech., Inc.*, No. 09-8297, 2011 WL 813600, at *2 (S.D.N.Y. Mar. 8, 2011) (denying request to reinstate lawsuit dismissed on forum non conveniens grounds because "it appears that [plaintiff] has not pursued his claims in China with any real diligence"). Indeed, "[a] conditional forum non conveniens dismissal protects a plaintiff against the possibility that the foreign forum will not hear his case. It does not give the plaintiff license to deliberately prevent his suit in the foreign court from going forward in order to render an alternative forum defective." *MBI Grp., Inc.*, 616 F.3d at 572; *see Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 675 (5th Cir. 2003) ("A return jurisdiction clause remedies [the concern that the foreign forum will remain available] by permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum.").

In this case, it is unnecessary to determine whether Rule 60(b)(6) applies, as Plaintiffs have not satisfied the terms of the return-jurisdiction provision imposed by Judge Ward. As set forth above, the return-jurisdiction clause provided:

> Should the courts of Mexico refuse to accept jurisdiction of this case for reasons other than Plaintiffs' refusal to pursue an action or to comply with the procedural requirements of Mexican courts, this Court may reassert jurisdiction upon timely notification of the same.

Here, Plaintiffs filed some, but not all, of the cases dismissed by Judge Ward in Mexico. Because counsel made no attempt to litigate those cases in Mexico in compliance with the court's Memorandum and Order, there is no basis upon which to reopen them here.

With regard to the cases filed in Mexico, Defendants argue that reinstatement is not warranted because Plaintiffs failed to inform the Mexican courts of Defendants' consent to jurisdiction and to comply with the procedural requirements of the Mexican Courts. Essentially, Defendants argue that Plaintiffs did not prosecute the cases in good faith. The court agrees.

First, as explained by Defendants' Mexican legal expert, Claus Werner von Wobeser Hoepfner ("Wobeser Hoepfner"), a Mexican court should defer to the parties' consent when determining whether to exercise jurisdiction over Defendants. *See* Docket No. 263-1 (Wobeser Hoepfner Declaration, Nov. 1, 2013); Docket No. 277-1 (Wobeser Hoepfner Declaration, Jan. 10, 2014); *see also City of New Orleans Emps. Ret. Sys. v. Hayward*, 508 F. App'x 293, 296 (5th Cir. 2013) ("A defendant's submission to the jurisdiction of a foreign forum sufficiently satisfies the availability requirement."); *Ibarra v. Orica U.S.A. Inc.*, 493 F. App'x 489, 493 (5th Cir. 2012) ("Mexico is presumed to be an available forum for tort suits against a defendant willing to submit to jurisdiction there.") (citing *In re Ford Motor Co.*, 591 F.3d 406, 412-13 (5th Cir. 2009) (stating that "many decisions create a nearly airtight presumption that Mexico is an available forum")).

Article 104, section II, of the Mexican Constitution provides that Mexico's federal courts will have jurisdiction over "all controversies of a civil or criminal nature regarding the implementation or application of federal laws or of international treaties entered into by the Mexican State" and "controversies involving maritime law." Jorge A. Vargas, *Mexican Law for*

9

*the American Lawyer*, 30-31 (2009); *see* Docket No 277-1 (Wobeser Hoepfner Declaration). In addition, article 4 of the Mexican Navigation and Maritime Trade Act provides that federal jurisdiction encompasses "in general all the acts and facts that take place" in the Mexican internal marine waters and the Mexican marine zones. LEY DE NAVEGACION Y COMERCI MARITIMOS, art. 4. Plaintiffs' Mexican lawyer, Hector Tijerina Aguilar ("Tijerina Aguilar"), appears to agree with the proposition that the Mexican courts have subject matter jurisdiction, as he recognized in his declaration that a Mexican court "[a]nalyzes its competence by subject, that is to say in this concrete case the federal judge is competent by subject because it relates to a petroleum platform accident and it occurred in high seas." *See* Docket No. 272-1 (Tijerina Aguilar Letter, Nov. 13, 2013).

Article 23 of Mexico's Federal Code of Civil Procedure ("FCCP") provides that territorial jurisdiction can be extended through the mutual consent of the parties. It states:

> The territorial jurisdiction is extendable by the parties' express or tacit mutual consent:
>
> There is tacit extension:
>
> I.      By plaintiff, by appearing before the court upon filing its claim;
>
> II.     By defendant, by answering the complaint and counterclaiming against the plaintiff; and
>
> III.    By any of the interested parties, when such party desists from a jurisdiction.

CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES [FCCP], art. 23.

Absent express or tacit consent to jurisdiction, however, article 24 of the FCCP, section IV, states that by reason of territory the competent court is that "from the defendant's domicile, when dealing with . . . personal actions." CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES

[FCCP], art. 24. Further, the First Chamber of Mexico's Supreme Court held in April 1998, that "when dealing with competence conflicts, . . . full evidentiary weight should be granted to documents where it appears that the parties have submitted themselves expressly and conclusively to the jurisdiction of certain courts." *See* Docket No. 263-1 (Competencia. Para Su Resolución Debe Darse Valor Probatorio Pleno a Las Documentales Que Contengansometimiento Expreso de Las Partes, 9a. Época; 1a. Sala; S.J.F. y su Gaceta; Tomo VII, Abril de 1998; Pág. 143.). Plaintiffs' expert does not specifically challenge any of the aforementioned authorities, which were attached by Wobeser Hoepfner.

Based on the foregoing authorities, Wobeser Hoepfner opines that where, as here, "a potential group of defendants have expressly submitted themselves in writing to the jurisdiction of Mexico's federal courts in connection with a civil dispute arising from events which took place in Mexican waters, upon a Plaintiff's filing informing the court of the defendants' express submission, a federal court will assume jurisdiction under article 23 of the FCCP." The question becomes, then, whether Plaintiffs properly informed the Mexican courts of Defendants' stipulations or Judge Ward's orders dated April 20 and May 4, 2011. The court finds they did not.

Despite Plaintiffs' assertions to the contrary, the evidence in the record suggests that the Mexican courts were not aware of Defendants' consent to jurisdiction. First, the dismissal orders by the Mexican judges made no reference to Defendants' jurisdictional submission.[5] This indicates that the Mexican judges were not apprised of Defendants' position or their stipulations

---

[5] The Mexican dismissal orders did not state or suggest, for example, that despite Defendants' submission to jurisdiction, the court nonetheless declined to exercise jurisdiction.

by Plaintiffs. Second, the complaints filed in Mexico do not state that Defendants submitted to jurisdiction in Mexico. Rather, the complaints contain the following paragraphs:

> [T]he order from the Court of the United States in the East [sic] District of Texas, Lufkin Division, the same that serves to justify the facts narrated in this document as number 10 and which has its basis on the Articles 129, 130, 132, and the other related articles of the Federal Code of Civil Procedures.
>
> [T]here has been an attempt to sue before the United States Court in the Eastern District of Texas, Lufkin Division, the parties hereby sued but nevertheless, such Court provided on April 20, 2011, that such claim shall be filed before the Mexican Courts, being competence of this District Court.

Although Plaintiffs cite to these paragraphs as proof the they advised the Mexican courts of Defendants' consent to jurisdiction, these provisions merely acknowledge that the lawsuits were previously filed in the Lufkin Division of the Eastern District of Texas. They do not advise the court of Defendants' express consent to jurisdiction. Notably, Plaintiffs' counsel chose to file similarly-worded complaints after receiving dismissal orders for the first several cases instead of correcting the inadequacies by expressly stating that Defendants had submitted to Mexico's jurisdiction in writing.

Third, Plaintiffs did not file translated copies of the stipulations or the court's orders dated April 20 and May 4, 2011. Under article 271 of the FCCP, "any writing in a foreign language shall be accompanied by its corresponding translation to Spanish." CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES [FCCP], art. 271. In addition, Article 569 of the FCCP provides that when dealing with "judgments, decisions or jurisdictional determinations that will only be used as evidence before the Mexican courts, it will suffice if those documents satisfy the necessary requirements to be considered authentic." CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES [FCCP], art. 569. As explained by Wobeser Hoepfner, this court's documents are considered

authentic in Mexico if they satisfy the requirements from the Hague Convention Abolishing the Requirement for Legalization for Foreign Public Documents (Articles 2-5), to which both Mexico and the United States are parties, by presenting such documents duly apostilled and with a proper translation pursuant to FCCP Article 271. *See* Jorge A. Vargas, *Mexican Law for the American Lawyer*, 117, 199-200 (2009) (explaining "authentic documents" as a form of evidence and the need for an "apostille"[6]); *see also* Texas Secretary of State, Authentication of Documents, *http://www.sos.state.tx.us/authfaqs.shtml*.

Plaintiffs have attached receipts acknowledging the filing of the complaints in Mexico. The receipts include a list of exhibits attached to each complaint. A review of the lists, however, suggests that Plaintiffs failed to file with the Mexican courts *original* apostilled copies with their corresponding translations into Spanish of Judge Ward's orders dated April 20, 2011, and May 4, 2011, or an original apostilled copy and translation of the Defendants' April 29, 2011, stipulations. Several of the receipts make reference to: (i) "simple" copies of the English version of the April 20, 2011, order; (ii) "simple" copies of the English version of the April 20, 2011, and May 4, 2011, orders; and (iii) "simple" copies of the court's orders without noting which specific order or whether it was in English or Spanish. Some of the lists of attachments also mention the inclusion of an "apostille" and "statement of effect of apostille," but these appear to be "simple" copies rather than originals. According to various Mexican precedents, simple copies

---

[6] An "apostille" is "a standard certification provided under the Hague Convention for authenticating documents used in foreign countries." BLACK'S LAW DICTIONARY 112 (9th ed. 2009). The purpose of an apostille is to "abolish the requirement of diplomatic or consular legalization for foreign public documents." Secretary of State, Authentication of Documents, *http://www.sos.state.tx.us/authfaqs.shtml*. A completed apostille certifies the authenticity of a signature, the capacity in which the person signing the document has acted, and identifies the seal/stamp which the document bears. *See id.*; *see also* Jorge A. Vargas, *Mexican Law for the American Lawyer*, 117, 199-200 (2009).

(those lacking any stamp, seal, or signature) are accorded little or no probative value unless they are weighed together with other evidence. *See* Docket No. 277-1 (Declaration of Wobeser Hoepfner and copies of Mexican precedents). Moreover, except in the case of Plaintiff Feliciana Perez Lopez de Alcudia ("Perez Lopez"),[7] there appears to be no Spanish translation of Judge Ward's orders.

Apart from the aforementioned receipts, Plaintiffs have also failed to provide this court with any copies of the original apostilled orders issued by Judge Ward or Defendants' stipulations (and their translation into Spanish) with some sort of marking (such as a date stamp by the Mexican court) to confirm that the documents were properly filed in the Mexican courts. These failures, along with counsel's decision to omit any express statement in the complaints informing the Mexican courts of Defendants' written submission to jurisdiction strongly suggests that Plaintiffs did not provide the Mexican courts with translated copies of Defendants' stipulations and duly apostilled, translated copies of Judge Ward's April 20 and May 4, 2011, orders.

Furthermore, although the return-jurisdiction clause in this case did not expressly require Plaintiffs to appeal the Mexican judgment, their failure to do so is perplexing given the clear Mexican legal authority supporting the exercise of jurisdiction in cases where, as here, Defendants have consented in writing to the jurisdiction of the Mexican courts. *See Aldana*, 2012 WL 5364241, at *7 (holding that even though the return-jurisdiction clause did not condition reinstatement on appellate review by the foreign court, the plaintiffs' failure to seek "final

---

[7] In Perez Lopez's case, it is unclear from the record which documents were produced in English and which were produced in Spanish.

appellate review" "preclude[ed] [the court] from finding the 'exceptional circumstances' standard is met").

For these reasons, the court finds that Plaintiffs did not comply with Mexican procedural law and did not prosecute their cases in good faith. Thus, because they have not satisfied the conditions set forth in the return-jurisdiction clause, reinstatement is not warranted.[8]

III. Conclusion

Consistent with the foregoing analysis, Plaintiffs' motion to reinstate is DENIED. Plaintiffs shall not seek reinstatement in this court unless and until they have pursued their claims in Mexico with diligence and good faith, including seeking final appellate review of any Mexican dismissal order.[9]

SIGNED at Beaumont, Texas, this 14th day of May, 2014.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[8] Given this conclusion, the court need not address Defendants' other arguments against reinstatement.

[9] According to Defendants' expert, Plaintiffs' claims were dismissed without prejudice by the Mexican courts. Thus, Plaintiffs can revise their complaints and re-file them in Mexico.

15